S11A1550. GROSSI CONSULTING, LLC et al. v. STERLING
CURRENCY GROUP, LLC.

(722 SE2d 44)

THOMPSON, Justice.

Appellants Grossi Consulting and its principal, Stefano Grossi (jointly "Grossi"), appeal the grant of an interlocutory injunction in favor of appellees, Sterling Currency Group and its principals, Jim Shaw and Ty Rhame (jointly "Sterling"), contending the trial court erred by entering an interlocutory injunction that fails to preserve the status quo. Finding no abuse of the trial court's discretion, we affirm.

Sterling Currency Group is a Georgia limited liability corporation engaged in the business of importing and then selling Iraqi currency, the dinar. In 2007, the company's principals met with Grossi Consulting, a company that specialized in web-based marketing strategies, in an effort to create an internet-based sales platform. Sterling ultimately hired Grossi to create the website, dinarbanker.com, and to perform customer service duties for Sterling. The parties' relationship was established through several contracts whereby Grossi agreed to design and manage the website as well as market and advertise

dinarbanker.com's business. These contracts provided that Grossi would be paid ten percent of all online sales.

By 2010, the business of dinarbanker.com had dramatically increased, resulting in monthly profits in the millions of dollars. To handle the increased volume, Grossi upgraded the website and established a customer service call center. Despite these improvements, on several occasions in 2010 Grossi was unable to meet the demands of the growing business and the website crashed, severely disrupting Sterling's business. Sterling alleges deficiencies in the website also hampered its ability to create reports necessary to satisfy federal auditing regulations and to efficiently process and ship orders.

Early in 2011, there were discussions between the parties regarding a new contract which would have modified the compensation scheme by which Grossi was paid. At about the same time, Grossi began to demand payments from Sterling for past invoices and sent Sterling a letter threatening to shut down the website if monies were not paid. Shortly thereafter, Stefano and an associate met with Rhame and threatened to take over or destroy the website if invoices totaling over $1 million were not paid immediately. Sterling paid the invoices the next day. Stefano then threatened to find a new "fulfillment company" to supply Sterling's customers if Sterling did not pay Grossi according to its terms.

Sterling filed suit against Grossi in March 2011 seeking a temporary restraining order, interlocutory and permanent injunctions, and damages. The trial court issued an ex parte temporary restraining order directing Grossi to, inter alia, maintain and not transfer, interfere with or dispose of any assets it controlled concerning Sterling Currency Group, including those related to dinarbanker.com. Grossi moved to dissolve the temporary restraining order, and after a hearing, the court left the restraining order in place but added a provision requiring Sterling to continue compensating Grossi according to their written agreements.

A hearing on Sterling's request for an interlocutory injunction was held in April 2011 at which all parties presented evidence and oral argument. The trial court subsequently entered an interlocutory injunction ordering Grossi to transfer to Sterling all assets of the business of dinarbanker.com and ordering Grossi to "immediately refrain from manipulating or destroying any information generated by any asset belonging to or relating to the operation of [the website]." The order further provided that its provisions would last "until the final disposition of this matter on the merits, unless dissolved or superseded earlier by Order of the Court."

1. Grossi contends the trial court erred by issuing an interlocutory injunction that altered the status quo. When deciding whether

to issue an interlocutory injunction, a trial court should consider whether:

> (1) there is a substantial threat that the moving party will suffer irreparable injury if the injunction is not granted; (2) the threatened injury to the moving party outweighs the threatened harm that the injunction may do to the party being enjoined; (3) there is a substantial likelihood that the moving party will prevail on the merits of her claims at trial; and (4) granting the interlocutory injunction will not disserve the public interest.

*Bishop v. Patton*, 288 Ga. 600, 604 (706 SE2d 634) (2011). The decision whether to grant a request for interlocutory injunctive relief is in the discretion of the trial court according to the circumstances of each case, and we will not disturb the injunction a trial court has fashioned unless there was a manifest abuse of discretion. OCGA § 9-5-8; *Goode v. Mountain Lake Investments*, 271 Ga. 722 (2) (524 SE2d 229) (1999). "The purpose for granting interlocutory injunctions is to preserve the status quo, as well as balance the conveniences of the parties, pending a final adjudication of the case." *Benton v. Patel*, 257 Ga. 669, 672 (362 SE2d 217) (1987). Stated otherwise, an interlocutory injunction is a "device to keep the parties in order to prevent one from hurting the other whilst their respective rights are under adjudication." *Price v. Empire Land Co.*, 218 Ga. 80, 85 (126 SE2d 626) (1962). See also 11A Wright & Miller, Fed. Prac. & Proc., § 2948.1.

Given the evidence in the record, including evidence of Sterling's ownership interest in the business assets and Grossi's threats to do harm to dinarbanker.com, we cannot say it was a manifest abuse of the trial court's discretion to grant a preliminary injunction placing control of such assets in Sterling. *Franklin v. Sing-Wilkes, Inc.*, 215 Ga. 596, 597 (1) (112 SE2d 618) (1960) (where evidence is conflicting, "it can not be said that the court abused its discretion in either granting or denying the injunction"). As in *Byelick v. Michel Herbelin USA*, 275 Ga. 505 (1) (570 SE2d 307) (2002), whatever the merit of Grossi's claim that it became a joint venturer with Sterling or otherwise obtained an ownership interest in the business of dinarbanker.com, there is evidence in the record that Grossi came into possession and control of the business assets in its capacity as a contractor for Sterling Currency Group. The trial court was authorized to credit this evidence, and thus, the status quo was Sterling's possession of and control over dinarbanker.com and the business assets.

2. Grossi also contends the trial court's interlocutory order is, in

reality, a mandatory, permanent injunction affecting the rights of the parties. We disagree. By its plain language, the trial court's order does not render a final decision on the merits of the parties' claims. It states only that it is granting Sterling's motion for interlocutory injunction to preserve the status quo pending the final hearing. " 'The purpose of an interlocutory injunction is preliminary and preparatory; it looks to a future final hearing, and while contemplating what the result of that hearing *may be*, it does not settle what it *shall* be.' [Cit.]" *Byelick*, supra, 275 Ga. at 506-507. See *City of Willacoochee v. Satilla Rural Electric Membership Corp.*, 283 Ga. 137, 139 (657 SE2d 232) (2008). Contrary to Grossi's assertion, the interlocutory injunction affects Grossi's rights no more than necessary to preserve the status quo and protect Sterling from the threatened harm.

*Judgment affirmed. Hunstein, C. J., Carley, P. J., Benham, Hines and Melton, JJ., and Chief Judge Harry Jay Altman II, concur. Nahmias, J., disqualified.*

DECIDED JANUARY 23, 2012.

*Avani H. Patel*, for appellants.
*King & Spalding, Lynette W. McNeil, L. Joseph Loveland, Jr., Michael M. Raeber, David M. Lilenfeld*, for appellee.